UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

PASQUAL AGUILAR, individually and on behalf of the General Public of the State of California,

    Plaintiff,

  v.

CITIMORTGAGE, INC., and DOES 1 to 50,

    Defendant.
_____/

NO. 2:10-cv-0862-FCD/KJM

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on the motion of plaintiff Pasqual Aguilar ( "plaintiff" or "Aguilar") for a preliminary injunction preventing defendant Citimortgage, Inc. ("CITI") from continuing any foreclosure, eviction, or other ejectment proceedings from the property located at 8711 Los Banos Way, Elk Grove, CA 95624 (the "Property").  Defendant opposes the motion. The court heard oral arguments on the motion on June 4, 2010. For the reasons set forth below, plaintiff's motion is DENIED.

1

**BACKGROUND**

In June 2003, plaintiff purchased the Property. (Decl. of Pasqual Aguilar in Supp. of Preliminary Injunction ("Aguilar Decl."), filed Apr. 23, 2010, at 2; Ex. D to Decl. of Jennifer Oakes in Supp. of Def.'s Opp'n ("Oakes Decl."), filed May 26, 2010.) Defendant is the servicer under the Deed of Trust. (Oakes Decl. ¶ 1.)

In or around November 2008, plaintiff contacted defendant to discuss the possibility of a loan modification as a result of a financial hardship. (Aguilar Decl. at 2.) An unnamed representative informed plaintiff that CITI would not work with plaintiff because he was not currently in breach of his loan terms. (Id.) Plaintiff was advised to stop making payments for a period of three months, at which time defendant would consider a loan modification. (Id.) Plaintiff stopped making his loan payments. (Id.)

On or about February 18, 2009, defendant sent a Notice of Delinquency to plaintiff. (Oakes Decl. ¶ 4.) On March 2, 2009, CITI's Loss Mitigation department was contacted by plaintiff, who indicated that his job had decreased and resulted in financial difficulties. (Id. ¶ 5.) On or about April 1, 2009, CITI's Loss Mitigation department contacted plaintiff via telephone and offered to enter into a temporary forbearance agreement for three months, whereby he would make payments of $650 due April 15, 2009, May 15, 2009, and June 15, 2009. (Id. ¶ 6.) Plaintiff made these three payments. (Aguilar Decl. at 3.)

In or around May 2009, plaintiff sent all documents requested by defendant necessary to process a loan modification.

1  (Id.)  When plaintiff contacted defendant in July 2009, he was
2  told that defendants had no documents in the computer related to
3  a loan modification.  Plaintiff resubmitted the same documents.
4  (Id.)

5       On July 15, 2009, CITI made telephone contact with
6  plaintiff, advised plaintiff that he had a right to request a
7  subsequent meeting, assessed plaintiff's financial situation, and
8  discussed option to assist with the delinquency.  (Oakes Decl. ¶
9  7.)[1]  Plaintiff did not request a subsequent meeting.  (Id.)
10 Plaintiff was also provided the toll-free telephone number made
11 available by the United States Department of Housing and Urban
12 Development ("HUD") to find a HUD-certified housing counseling
13 agency.  (Id.)  Plaintiff was advised of these rights again on
14 August 24, 2009 and August 28, 2009.  (Id.)  Plaintiff contends
15 that in August 2009, defendant informed him that they had
16 received the loan modification documents and that they were
17 actively working on obtaining a loan modification.  (Aguilar
18 Decl. at 3.)

19      In or around September, 2009, plaintiff contacted defendant
20 to check on the status of his loan modification.  (Aguilar Decl.
21 at 3.)  At that time, defendant informed him that it had no
22 documentation in the system of any request for loan modification
23 nor did they have any documents necessary for a loan
24 modification.  (Id.)  Plaintiff immediately again sent the
25 paperwork.  (Id.)

---

[1] The Oakes declaration has two paragraphs labeled as (5) and (6).  The court cites to the number that should be reflected next to the paragraph.

On September 9, 2009, a Notice of Default was recorded. (Oakes Decl. ¶ 8.)  The Notice of Default included a declaration that the mortgagee, beneficiary, or authorized agent had contacted the borrow or tried with due diligence to contact the borrow as required by California Civil Code § 2923.5.  (Id.)

On January 7, 2010, a Notice of Trustee's Sale was filed. (Oakes Decl. ¶ 9; Ex. B to Oakes Decl.)  The foreclosure sale was held on March 15, 2010, and the Property was purchased by CITI for $179,340.74.  (Oakes Decl. ¶ 10.)  A Trustee's Deed Upon Sale was recorded on April 1, 2010.  (Id. ¶ 11; Ex. C to Oakes Decl.) Plaintiff was contacted by a lawyer and given a 90 day notice to quit.  (Aguilar Decl. at 4.)

After February 18, 2009, plaintiff never cured the delinquency on his mortgage, reinstated his loan, or attempted any credible tender of all sums due and owing on the loan. (Oakes Decl. ¶ 4.)

**STANDARDS**

"A preliminary injunction is not a preliminary adjudication on the merits, but a device for preserving the status quo and preventing the irreparable loss of rights before judgment." Textile Unlimited, Inc. v. A.. BMH and Company, Inc., 240 F.3d 781, 786 (9th Cir.2001).  In Winter v. NRDC, 129 S. Ct. 365, 374-75 (2008), the United States Supreme Court clarified the standard for granting a preliminary injunction:  A plaintiff seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits of its claims; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an

4

injunction is in the public interest.  The Court made clear that even where a plaintiff has shown a strong likelihood of success on the merits of its claims, the plaintiff still must show a likelihood of irreparable harm--the mere possibility of irreparable harm is insufficient.  Id. at 375-76 (holding that "[i]ssuance of a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief").  Ultimately, because a preliminary injunction is an extraordinary remedy, in each case, the court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  Id. at 376.

**ANALYSIS**

**A.   Likelihood of Success on the Merits**

In support of his motion for preliminary injunction, plaintiff relies on his claims for fraud, violation of California Civil Code § 2923.5, and violation of California Business and Professions Code § 17200.  Plaintiff contends that the Notice of Default and subsequent Trustee Sale are invalid and thus, any eviction or ejectment proceedings should be enjoined.

**1.   Inability to Tender**

Plaintiff is unable to demonstrate the likelihood of success on any claims relating to rescission or declaratory relief because of his inability to tender the amount of his indebtedness.  "A valid and viable tender of payment of the

5

indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." Karlsen v. American Sav. & Loan Assn., 15 Cal. App. 3d 112, 117 (Cal. App. 2d Dist. 1971). "[A]n action to set aside the sale, unaccompanied by an offer to redeem, [does] *not* state a cause of action which a court of equity would recognize." Id. (quoting Copsey v. Sacramento Bank, 133 Cal. 659, 662 (1901)). The majority of California district courts utilize the Karlsen rationale in examining claims that, in essence, amount to assertions of wrongful foreclosure. Anaya v. Advisors Lending Group, 2009 U.S. Dist. LEXIS 68373 (E.D. Cal. Aug. 3, 2009) ("Plaintiff offers nothing to indicate that she is able to tender her debt to warrant disruption of non-judicial foreclosure"); Alicea v. GE Money Bank, 2009 U.S. Dist. LEXIS 60813 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for foreclosure."); Montoya v. Countrywide Bank, 2009 U.S. Dist. LEXIS 53920 (N.D. Cal. June 25, 2009) ("Under California law, the "tender rule" requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the secured debt"). The application of the "tender rule" prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." Williams v. Countrywide Home Loans, 1999 U.S. Dist. LEXIS 14550 (N.D. Cal. Sept. 15, 1999).

In this case, plaintiff has failed to present any evidence, let alone allege, that he is able to tender payment of the secured debt. Indeed, defendant has presented evidence that, aside from three $650 forbearance payments, plaintiff has not paid his mortgage since February 2009. Further, in his motion for preliminary injunction, plaintiff concedes that he has a limited income and as a result, seeks a no bond or a nominal bond. This concession and request further indicates that plaintiff does not have the ability to tender.[2] Accordingly, plaintiff has failed to demonstrate a likelihood of success on the merits for any equitable remedy arising out of an alleged wrongful foreclosure.

**2.  Merits of Plaintiff's Claims**

Furthermore, plaintiff is also unable to demonstrate a likelihood of success on the merits of the claims he argues support issuance of a preliminary injunction.

First, plaintiff's allegations of fraud are based on conclusory allegations without evidentiary support. Under California law, the elements of common law fraud are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damages." Gil v. Bank of Am., Nat'l Ass'n, 138 Cal. App. 4th 1371, 1381 (2006). A plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In other words, the plaintiff must include "the who, what, when, where, and how" of

---

[2] Furthermore, the court rejects plaintiff's contention that property purchased by defendant can serve as a security interest.

7

1 the fraud. Id. at 1106 (citations omitted). "The plaintiff must
2 set forth what is false or misleading about a statement, and why
3 it is false." Decker v. Glenfed, Inc., 42 F.3d 1541, 1548 (9th
4 Cir. 1994). When asserting a fraud claim against a corporation,
5 "the plaintiff's burden . . . is even greater. . . . The
6 plaintiff must 'allege the names of the persons who made the
7 allegedly fraudulent representations, their authority to speak,
8 to whom they spoke, what they said or wrote, and when it was said
9 or written.'" Lazar v. Superior Court, 12 Cal. 4th 631, 645
10 (1996) (quoting Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal.
11 App. 4th 153, 157 (1991)); see also Edejer, 2009 U.S. Dist. LEXIS
12 52900 at *36  (dismissing the fraud claim where the plaintiff did
13 not allege any misrepresentation or false statements made by the
14 defendants; did not allege the names of the persons who made the
15 allegedly fraudulent representations and their authority to
16 speak; and did not allege with sufficient particularity or
17 clarity what was false or misleading about the statements);
18 Mohammad Akhavein v. Argent Mortgage Co., 2009 U.S. Dist. LEXIS
19 61796, at *10 (N.D. Cal. July 17, 2009).
20      In this case, plaintiff asserts that he was advised by an
21 unnamed representative at the 800 customer service number that he
22 should stop making payments for a period of three months, at
23 which time defendant would consider a loan modification. As an
24 initial matter, plaintiff has not set forth who the unnamed
25 representative was or whether he was authorized to give such
26 advise on behalf of defendant CITI. Further, plaintiff's own
27 assertions state that he was told to stop payments for three
28 months, not indefinitely. While plaintiff argues that a loan

1  modification was "promised" and good faith payments were made in
2  accordance thereto, such argument is belied by plaintiff's own
3  assertions that he was communicating with defendants about a
4  potential loan modification from May to September 2009, well
5  after the $650 payments were made in April, May, and June 2009.
6  Accordingly, at this stage in the litigation, plaintiff has
7  failed to demonstrate that he has a likelihood of succeeding on
8  his fraud claim.

9  Second, plaintiff's allegations that defendant failed to
10 comply with California Civil Code § 2923.5 prior to issuing the
11 Notice of Default are similarly without evidentiary support.
12 Section 2923.5 requires a lender or its agent to attempt to
13 contact a defaulted borrower prior to foreclosure. See Vega v.
14 JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1112 (E.D. Cal.
15 2009). Specifically, it requires that a "mortgagee, beneficiary,
16 or authorized agent" attempt to "contact the borrower in person
17 or by telephone in order to assess the borrower's financial
18 situation and explore options for the borrow to avoid
19 foreclosure." Cal. Civ. Code § 2923.5(a)(2). However, the
20 section does not mandate that a borrower's loans be modified.
21 Vega, 654 F. Supp. 2d at 1113.

22 Plaintiff concedes that he spoke to defendants in November,
23 April, May, July, and August regarding a loan modification.
24 Further, defendant presents evidence that CITI advised plaintiff
25 of various rights implicated by § 2923.5 on July 15, 2009, August
26 24, 2009, and August 28, 2009. More than thirty days had passed
27 from when contact was made with the borrower and when the Notice
28 of Default was recorded on September 9, 2009. Further,

9

1 plaintiff's assertions reveal that defendant requested and
2 received documents relating to loan modification and had various
3 discussions with plaintiff regarding a loan modification.  As
4 such, at this stage in the litigation, plaintiff has failed to
5 demonstrate that he has a likelihood of succeeding on his claim
6 for violation of § 2923.5.

7 Finally, plaintiff's allegation that defendant has a custom
8 and practice of wrongfully foreclosing on properties and
9 violation state statutes in violation of California Business and
10 Professions Code § 17200 is based purely on conclusory assertions
11 set forth in plaintiff's moving papers.  This is insufficient to
12 demonstrate a likelihood of success on the merits.

13 **B.   Irreparable Injury, Balance of Equities, and Public Interest**

14 Plaintiff contends that he will suffer irreparable injury if
15 he and his family are evicted from their primary residence, where
16 they have lived for nearly 6 years.  It is clear that foreclosure
17 of one's residence establishes a likelihood of suffering
18 irreparable harm.  See, e.g., Alcaraz v. Wachovia Mortgage, FSB,
19 592 F. Supp. 2d 1296, 1301 (E.D. Cal. 2009) ("Clearly, loss of a
20 home is a serious injury"); Wrobel v. S.L. Pope & Assocs., 2007
21 WL 2345036, at *1 (S.D. Cal. 2007)("Losing one's home through
22 foreclosure is an irreparable injury"); Cronkhite v. Kemp, 741
23 F.Supp. 822, 825 (E.D. Wash. 1989) (irreparable injury
24 established where deed of trust contained no redemption period,
25 and foreclosure would result in plaintiff losing home and all
26 equity); see also Sundance Land Corp. v. Comty. First Fed. Sav. &
27 Loan Ass'n, 840 F.2d 653, 661-62 (9th Cir. 1988) (recognizing
28 that foreclosure on real property constitutes irreparable

10

injury).  However, given plaintiff's paucity of evidence to support a likelihood of success on the merits and that plaintiff has never attempted any credible tender of the sums due and owing on his loan over the past year, the balance of equities and the public interest do not weigh in favor of granting the requested injunctive relief.

## CONCLUSION

Therefore, for the foregoing reasons, plaintiff's motion for a preliminary injunction is DENIED.

IT IS SO ORDERED.

DATED: June 4, 2010

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE